IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**RICHARD J. DRAKULICH,**

**Defendant.**                                         **No. 02-30061-DRH**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

The Court has before it, on limited remand pursuant to the Seventh Circuit's practice announced in ***United States v. Paladino,*** **401 F.3 471 (7th Cir. 2005)**, an opportunity to consider whether it would have imposed a different sentence than the sentence of 151 months imprisonment and 3 years supervised release previously imposed prior to the Supreme Court's decision in ***United States v. Booker*****, 125 S. Ct. 738 (2005)**. The original guideline calculation for the Defendant suggested an offense level 28, with a sentencing range of 78 - 97 months. However, the Court granted the government's motion for an "upward departure." Adding 4 levels, the Court "departed" to a level 32 with a range of 121 - 151 months.[1]

The Court does not have the record before him, which is not a complete

---

[1] The Court understands that the use of the term "departure" is now disfavored. However, the Court uses this term as it was the accepted nomenclature at the time of Defendant's sentencing.

1

disability because this case and this Defendant made a very significant impression upon the Court. The Court remembers the case and the Defendant clearly. The Court has the presentence report (PSR) available to him and the briefs of the parties as well. The undersigned, however, does extend his apologies to all concerned for his failure to issue this order earlier, offering no excuse and accepting all responsibility for the failure to have it issued in a timely manner. Particularly, the Court's regrets for the timing of this order are conveyed to Defendant who deserved better service from this Court than this. However, without the record, this order will not refer to transcript pages or other specific record references and, in light of its timing, the Court did not want to hold it any longer. Defendant deserves to learn of the Court's position now rather than to wait for the Court to send for the record.

The Court would impose the same sentence today, post-***Booker***, that he imposed before. The Court adopts the reasons that it stated on the record at the time of the original sentence in support of the position he now takes. Quite frankly, one thing this judge does not remember is why he stated that sentencing was easy because his discretion was removed because of the guidelines, since such a statement was inconsequential in light of the upward departure. To the contrary and continuing to be frank, what was fairly easy was departing upward and imposing a strong sentence and message to Defendant and others inclined to replicate his crime. The reasons for that conclusion are quite clear and going through the sentencing factors will bring that to light.

In looking at the sentencing statute, **18 U.S.C. § 3553(a)**, the Court must first look at the nature and circumstances of the offense and the history and characteristics of the Defendant. This offense was serious indeed. It was devastating in its nature to scores of people, more than a hundred victims, who lost well in excess of a million dollars. Some people lost retirement money, some lost their savings, one even lost the only money she and her father set aside for her medical care. To say this crime was anything less than a devastation to its victims would be an insult. One lady committed suicide and though there wasn't a suicide note saying that her loss was the proximate cause, there was enough circumstantial evidence to infer it by a preponderance.

As for the character of the Defendant, although Defendant had never been convicted of a crime before, he was clearly a fraud at his very core. He never did accept responsibility nor accept that a crime had ever been committed by him, despite his plea. He even tried to present himself as a victim. Despite the fact that he took money from the real victims and spent it on himself and his family, even though there was other money that was so surreptitiously distributed that it could never be traced, the Defendant continued to maintain his alleged victim's posture right through sentencing. In other words, he attempted to perpetrate a fraud on the Court right throughout the judicial process.

The Court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. It was quite clear, given the large number of people that

3

this crime impacted, the scale of the crime (in terms of the number of states that the defendant operated, the complicated scheme that the Defendant pursued in both marketing the scheme and in hiding the money and spending it), and the nature of the Defendant's continued attempts to deny responsibility that there was a need for a substantial sentence to effectuate each of these factors. People are vulnerable to investment schemes that make promises that, though unrealistic, promise great wealth. People who become trusting of others, enough to actually turn over to them funds such as life savings, retirement funds and medical expense accounts, and are convinced by the marketing representations that are nothing more than fraudulent and empty promises are vulnerable to criminals such as the Defendant. The only way the judiciary can respond is through a strong statement of retribution for those who prey on people who are so vulnerable.

      Likewise, in responding to the statute's mandate to reflect the need to afford adequate deterrence to criminal conduct and protect the public from further crimes of the Defendant, the Court felt that a strong message had to be sent to the Defendant as well as others inclined to replicate his crimes. The Defendant did not show any responsibility, let alone, remorse. He did not give any credible indication to the Court that he had gotten the message or that the Court could hope that he understood that his actions were illegal and that the Court should have any hope that Defendant would refrain from a life of fraud and deceit once released from prison. The Court had to and must impress on Defendant that his preying on the vulnerable, or anyone, will not be tolerated. Likewise, others who believe that they may collect

4

millions from unsuspecting and vulnerable people must know that when they get caught, they will spend a significant period of time in prison. Fraudulent conduct on this large scale cannot be profitable. Some people may believe that being paid millions in exchange for just a couple of years in prison is a profitable venture. It is the responsibility of the judiciary to make certain that there isn't any profit in crime.

As for the kinds of sentences available, probation in this case, in this judge's opinion, would be a greater devastation than the financial ruin that the Defendant visited upon his victims. It would make a mockery of not only the criminal laws which the Defendant violated, but would effectively be like the Court thumbing its nose at the law enforcement community and the victims. It will not happen.

The Court is to consider the kinds of sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant. The Court certainly did that as aforementioned. The Court is likewise directed to address the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. The Court addressed all of these issues in the course of responding to the government's motion for an upward departure.

At the time of the Defendant's sentencing, May of 2004, the 2002 manual of the Sentencing Guidelines was in effect. In that manual, the Sentencing Commission added 2, 4 or 6 offense levels depending on the number of victims, whereas the 1995 manual had not imposed any enhancements based on the number

of victims. However, to avoid any potential ex post facto problems, the Court used the 1995 manual. There is no question, however, that a policy statement of the Commission had been made by May of 2004 and the statute directs the Court to take those policy statements into account. The 2002 manual directs a 4 level increase for that specific offense characteristic. **USSG § 2B1.1.1(B)(2).** Utilizing that reasoning and that characteristic as a guide, the Court granted the upward departure motion and increased the Defendant's offense level by 4.

In the current nomenclature, the Court looks to determine if a variance is reasonable. Utilizing the same analysis and reasoning and knowing that the Sentencing Commission had a policy in place, at the time of sentencing, that increased the offense level for the number of victims that suffered under this Defendant's crimes, the Court finds it reasonable to vary from the guidelines' original calculation accordingly. Likewise, the Court finds its original reasoning sound and would vary in the same fashion using the same guide of 4 levels in accordance with the Sentencing Commission's policy. It is persuasive that the Commission, by the time the Defendant was sentenced, had determined a need to enhance sentences in recognition of the number of victims. It also makes complete sense. It would be one thing to have one person suffer the tremendous burden of losing a million and a half dollars and quite another to have many, many people suffer immeasurably as was the nature of this Defendant's crime. Both are, at the least, crimes of the scope of a million and a half dollars, but the devastation visited by the Defendant's crime conceivably has a much greater impact. The suffering he has delivered far exceeds

that of the other example of the single person. As compared to other offenders for whom the 1995 guidelines were applied then, this Defendant stands out as one for whom a different sentence is warranted. For this Defendant, for the reasons stated, the necessary sentence, the just and reasonable sentence, is a sentence of 151 months, followed by 3 years supervised release and the restitution order, which is not at issue at the present time. Consequently, in answer to the Circuit Court's inquiry, the trial court would impose the same sentence again if the case were remanded for that purpose.

**IT IS SO ORDERED.**

Signed this 12th day of October, 2006.

/s/        David   RHerndon
**United States District Judge**